J-S26022-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| ALBERTO SANTANA | : | |
| | : | |
| Appellant | : | No. 2539 EDA 2022 |

Appeal from the Judgment of Sentence Entered September 27, 2022
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0004445-2021

BEFORE: STABILE, J., KUNSELMAN, J., and McLAUGHLIN, J.

MEMORANDUM BY KUNSELMAN, J.: **FILED DECEMBER 5, 2023**

Alberto Santana appeals from the judgment of sentence imposed after he was convicted of several firearm charges.[1] He challenges the sufficiency of the evidence. Upon review, we affirm.

The trial court summarized the pertinent facts and procedural history as follows:

> On April 18, 2021, around 3:30 p.m., Angela Smith ("Ms. Smith") was working at the Sunoco gas station at 500 W. Erie Ave. in Philadelphia. Alberto Santana ("[Santana]") was using one of the station's video gaming terminals. He had won over $200 in vouchers and wished to exchange them for cash. Due to some system error, however, Ms. Smith was unable to immediately pay [Santana] the full amount to which he was entitled. [Ms. Smith testified that Santana] grew angry; he withdrew a black handgun from his waistband and asked [her] if she would rather he rob the

---

[1] 18 Pa.C.S.A. §§ 6105(a)(1), 6106(a)(1), and 6108.

station. Although Ms. Smith was behind plexiglass during the encounter, she testified that the handgun was held only a few feet away from her. She further testified that she had seen firearms on about five prior occasions.

Ms. Smith promptly called her manager, and [Santana] left the gas station in his car. [He] returned to the station about [ten] minutes later, and Ms. Smith told him that the police were on their way. Police arrested [Santana] shortly thereafter. No handgun was recovered.

[Santana] was charged with three counts: (i) possession of firearm prohibited, 18 Pa. C.S.A. § 6105(a)(1); (ii) firearms not to be carried without a license, [*id.*] at § 6106(a)(1); and (iii) carrying firearms on public streets in Philadelphia, [*id.*] at § 6108. [Santana] elected a bench trial and, on April 7, 2022, was tried before [the trial court]. The parties stipulated to [Santana's] ineligibility to possess a firearm. [He] was subsequently found guilty on all counts.

Trial Court Opinion, 01/30/23, at 1-2.

On September 27, 2022, Santana was sentenced to four to eight years' incarceration. Santana filed a post-sentence motion, which the trial court denied.

Santana filed this timely appeal. He and the trial court complied with Pennsylvania Rule of Appellate Procedure 1925.

Santana presents the following single issue for our review:

Did the Commonwealth present sufficient evidence to sustain a conviction for [s]ections 6105, 6106, and 6108 of the Uniform Firearms Act?

Santana's Brief at 7.

In reviewing a sufficiency claim, this Court:

must determine whether the evidence admitted at trial, as well as all reasonable inferences drawn therefrom when viewed in the

light most favorable to the verdict winner, are sufficient to support all elements of the offense. Additionally, we may not reweigh the evidence or substitute our own judgment for that of the fact finder. The evidence may be entirely circumstantial as long as it links the accused to the crime beyond a reasonable doubt.

*Commonwealth v. Koch*, 39 A.3d 996, 1001 (Pa. Super 2011) (citations omitted). "Because evidentiary sufficiency is a question of law, our standard of review is *de novo* and our scope of review is plenary." *Commonwealth v. Johnson*, 236 A.3d 1141, 1152 (Pa. Super. 2020) (citations omitted).

Santana first claims that the evidence was insufficient to convict him of persons not to possess a firearm under section 6105. To convict a defendant of this offense, the Commonwealth must show that the defendant has been convicted of an offense enumerated in section 6105(b) and possessed a "firearm." 18 Pa.C.S.A. § 6105(a)(1). For purposes of this offense, "firearm" is defined as:

> **(i) Firearm.--**As used in this section only, the term "firearm" shall include any weapons which are designed to or may readily be converted to expel any projectile by the action of an explosive or the frame or receiver of any such weapon.

*Id.* at § 6105(i).

Here, the parties stipulated that Santana was prohibited from possessing a firearm under section 6105 due to prior convictions. Thus, the first element was easily established. Santana argues, however, that the Commonwealth failed to present sufficient evidence to establish that he was in possession of a "firearm" on the day in question. Specifically, he claims that: 1) the testimony of a single witness was insufficient to sustain his

conviction because he did not discharge the gun and police did not discover a gun; 2) expert testimony was required to prove that the object Ms. Smith saw was a gun; and 3) the Commonwealth was required to prove the gun was operable. **See** Santana's Brief at 8. We disagree.

Our review of the record discloses that the uncontroverted evidence was sufficient to establish that Santana possessed a gun during the incident at the gas station. At trial, Ms. Smith testified that Santana pulled a black handgun from his waist after she told him she could not pay out his winnings. While holding the gun, Santana threatened to rob the gas station. Santana held the gun only a few feet from Ms. Smith, giving her a good view of it. Santana then put it back in his waistband. Ms. Smith further testified that she had seen a gun roughly five times prior to the incident, including once during a robbery. As such, she was familiar with guns and able to identify the object Santana had as a gun. N.T., 4/7/22, at 9-14.

Contrary to Santana's contention, a witness's testimony that they observed someone with a gun, alone, is sufficient evidence to establish possession; recovery of the gun is not required. **Commonwealth v. Robinson**, 817 A.2d 1153, 1161-62 (Pa. Super. 2003). Additionally, expert testimony is not required to establish that the object was a gun. Indeed, such testimony would be inadmissible, as expert testimony is admitted only when the subject matter is beyond the knowledge or experience of the average layman. When the issue is one of common knowledge, expert testimony is inadmissible. **See**, **Commonwealth v. O'Searo**, 352 A.2d 30, 32 (Pa.

1976); Pa.R.E. 701-702. As such, Ms. Smith's testimony alone was sufficient to establish that Santana possessed a gun.

Additionally, Santana contends that Ms. Smith's testimony was insufficient nonetheless because it did not establish that the gun was operable. To be considered a "firearm" under section 6105 and sustain his conviction, Santana maintains the gun must be operable, *i.e.*, capable of firing a shot. In support of his position, Santana cites **Commonwealth v. Layton**, 307 A.2d 843 (Pa. 1973). Santana's Brief at 14, 15. This reliance is misplaced.

In **Layton**, the police found the defendant in possession of a loaded pistol. The condition of it rendered it such that the defendant could not have fired at the time, to which the parties stipulated. Thereafter, the defendant was convicted of violating a provision of the Uniform Firearms Act, which prohibited a person who was convicted of a violent crime from possessing a firearm.[2] The defendant appealed, claiming that he could not be convicted of this crime if the object was not capable of firing a shot, *i.e.*, was inoperable. **Layton**, 307 A.2d at 845.

Upon review, our Supreme Court observed that the statute did not answer this question. Notably, the definition of firearm at the time defined a "firearm" as "any pistol or revolver with a barrel less then twelve inches, any shotgun with a barrel less than twenty-four inches or any rifle with a barrel

---

[2] 18 P.S. § 4628, which was repealed and replaced by section 6105.

less than fifteen inches."[3] Thus, to ascertain the Legislature's intent, the Court found that the goal of the statute was to prevent further violence, but that it only intended to cover objects which could cause violence by firing a shot. If the object was incapable of firing a shot, the Court reasoned it could not cause the violence the Act intended to prevent. *Id.*

Under the facts of that case, the Court concluded that the defendant did not violate the Act. *Id.* The Court acknowledged that "[a] reasonable fact finder may . . . infer operability from an object which *looks like, feels like, sounds like or is like, a firearm*. And such inference would be reasonable *without direct proof of operability*." *Id.* at 844 (emphasis added). However, because the parties there *stipulated* that the gun could not fire a shot due to its condition, the Court concluded that an inference of operability could not "reasonably be made where all parties agree that the object was not operable." *Id.* Thus, the Court reversed the defendant's conviction for illegal possession of a handgun because it was not operable.

Years after the Supreme Court decided *Layton*, the Legislature repealed the statute involved in *Layton* and enacted section 6105, which set forth a new, broader definition of "firearm." As a result, we have held that *Layton* does not apply to section 6105. In *Commonwealth v. Thomas*, 988 A.2d 669, 671 (Pa. Super. 2009), this Court explained:

---

[3] The definition of "firearm" in *Layton* was the same as is currently set forth in 18 Pa.C.S.A. § section 6102, the general definitions section for the Uniform Firearms Act. See discussion *infra*.

> In *Layton*, *supra*, our Supreme Court reversed a conviction for illegal possession of a handgun because the weapon was inoperable, and the record failed to establish why the gun would not fire. However*, that case was decided under a provision of the Uniform Firearms Act, 18 P.S. § 4628, which has been repealed and replaced by Section 6105*. The current statute applies to any weapon that is designed to fire ammunition containing an explosive charge, whereas section 4628 contained much narrower language and defined a firearm as "any pistol or revolver with a barrel less then twelve inches, any shotgun with a barrel less than twenty-four inches or any rifle with a barrel less than fifteen inches." Thus, contrary to [Thomas'] position, *Layton* is neither controlling nor instructive because that decision is based upon statutory language that was rewritten in 1995.

*Thomas*, 988 A.2d at 671 (emphasis added). We noted that the Legislature, in part, sought to eliminate the operability requirement for a "firearm" as articulated in *Layton*. *Thomas*, 988 A.2d at 672. Consequently, we held that he Commonwealth is not required to prove that a gun is operable to be considered a "firearm" under section 6105. *Thomas*, 988 A.2d at 671-72; *Commonwealth v. Batty*, 169 A.3d 70, 77 (Pa. Super. 2017) (trial court correctly charged jury that Commonwealth was not required to prove gun was operable under persons not to possess firearm).

Thus, contrary to Santana's claim, *Layton* does not apply to his conviction under section 6105. The Commonwealth was not required to show that the gun Santana possessed was operable to convict him of this offense.

In sum, viewing the evidence in the light most favorable to the Commonwealth, we conclude that there was sufficient evidence to convict Santana of persons not to possess a firearm under section 6105. Santana is therefore not entitled to any relief for his conviction.

Santana also claims that the evidence was insufficient to convict him of firearm violations under sections 6106 and 6108. To convict a defendant of carrying a firearm without a license under section 6106, the Commonwealth must show that the defendant "carrie[d] a firearm concealed on or about his person, except in his place of abode or fixed place of business, without a valid and lawfully issued license." *Id.* at § 6106(a)(1). To convict a defendant of carrying a firearm in the City of Philadelphia under section 6108, the Commonwealth must demonstrate that the defendant "carr[ied] a firearm. . . upon the public streets or upon any public property" without a license. *Id.* at § 6108.

Initially, we observe that the statutory definition of "firearm" for these sections is set forth in section 6102. It provides:

> "Firearm." Any pistol or revolver with a barrel length less than 15 inches, any shotgun with a barrel length less than 18 inches or any rifle with a barrel length less than 16 inches, or any pistol, revolver, rifle or shotgun with an overall length of less than 26 inches. The barrel length of a firearm shall be determined by measuring from the muzzle of the barrel to the face of the closed action, bolt or cylinder, whichever is applicable.

18 Pa.C.S.A. § 6102.

Because the parties stipulated that Santana prohibited from possessing a firearm, it follows that Santana did not have a license to carry a gun under sections 6106 or 6108, and he does not argue otherwise. Santana also does not claim that where he had the gun was not on public property or in the streets of Philadelphia as required under section 6108. Instead, Santana

makes the same arguments he made for section 6105 (single witness not enough, expert witness needed, and no proof that gun was operable). In light of our analysis above, we conclude that the Commonwealth's evidence also was sufficient to establish that Santana possessed a gun under these sections also.

We adopt the reasoning above refuting Sanatana's claims about a single witness and the need for expert testimony. However, we cannot summarily conclude that the Commonwealth was not required to show that the gun was operable as we did above. Our decision in *Thomas* only addressed operability and *Layton* in relation to section 6105, not sections 6106 or 6108. Additionally, we note that the Legislature did not change the definition of "firearm" applicable to sections 6106 and 6108. As such, the definition of "firearm" considered in *Layton* is the same definition that currently applies to sections 6106 and 6108. Therefore, we must consider Santana's operability argument in relation to his convictions under these sections.

Although operability under *Layton* remains a consideration for purposes of sections 6106 and 6108, as the Supreme Court stated therein, the finder of fact can infer operability from the circumstances without direct proof. *Layton supra*. Furthermore, the Commonwealth is not required to show operability in every case involving sections 6106 and 6108. In *Commonwealth v. Horshaw*, 346 A.2d 340 (Pa. Super. 1975), where an appellant claimed that the Commonwealth failed to present evidence that a weapon was operable, we explained:

> The Commonwealth need not show the weapon to have been operable ***until evidence of its inoperability has been introduced into evidence***, and [b]ecause no evidence as to inoperability was introduced into evidence, the appellant's claim is without merit.

*Id.* at 342 (emphasis added) (citing ***Layton supra***; ***Commonwealth v. Lee***, 302 A.2d 474 (Pa. Super. 1973)).

Here, Santana presented no evidence that the gun Ms. Smith saw him with was inoperable. He only made a legal argument claiming that the Commonwealth was required to demonstrate the gun was operable. This is not the law in Pennsylvania. The testimony established that Santana removed a gun from his waist band and threatened to rob the gas station. Without any evidence or suggestion that the gun was inoperable, the Commonwealth was not required to show that the gun Santana possessed was operable to convict him under sections 6106 and 6108.

Viewing the evidence in the light most favorable to the Commonwealth as the verdict winner, we conclude that there was sufficient evidence to sustain Santana's convictions under sections 6106 and 6108. Santana is therefore not entitled to any relief for these convictions.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary


Date: 12/5/2023